**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOCELYNE R. UY, WESTLEY U. VALLNUEVA,

                Plaintiffs,

  vs.

SANDY VAN, *et al.*,

                Defendants.

Case No.: 2:24-cv-00599-GMN-DJA

**ORDER**

Pending before the Court is a Motion to Dismiss, (ECF No. 12), filed by Defendants JML Holdings, LLC, JML Surgical Center, LLC, and Ngan Van Le (collectively "Le Defendants"). Plaintiffs Jocelyn R. Uy and Westley U. Villanueva filed a Response, (ECF No. 19), to which the Le Defendants filed a Reply, (ECF No. 25).

Further pending before the Court is a Motion to Dismiss, (ECF No. 14), filed by Sandy Van, Sandy Van, LLC dba Van Law Firm, and Van and Associates Law Firm, PLLC (collectively "Van Defendants"). Plaintiffs filed a Response, (ECF No. 17), to which the Van Defendants filed a Reply, (ECF No. 23).

Also pending before the Court is a Motion to Strike, (ECF No. 15), filed by the Van Defendants. Plaintiffs filed a Response, (ECF No. 18), to which the Van Defendants filed a Reply, (ECF No. 24).

For the reasons discussed below, the Court **GRANTS** the Le Defendants' Motion to Dismiss and **GRANTS in part, and DENIES in part,** the Van Defendants' Motion to Dismiss. The Court also **DENIES** the Van Defendant's Motion to Strike.

## I.         BACKGROUND

This case arises out of the alleged wrongful termination of two employees of a law firm after they raised concerns about unethical practices within the firm. (*See generally* First Am. Compl. ("FAC"), ECF No. 1-2).

Plaintiffs Jocelyn Uy and Westley Villanueva are both licensed attorneys in Nevada. (*Id.* ¶¶ 30, 31). Shortly after beginning their employment at Van Law, Plaintiffs reported issues with client files and staff supervision to Ms. Van, who in turn assured them of the firm's restructuring plans. (*Id.* ¶¶ 38–41). Despite Ms. Van's assurances, Van Law Firm allegedly continued to operate in a way that was unprofessional and violated Nevada's Rules of Professional Conduct. (*Id.* ¶¶ 42, 43).

A few months after starting her employment at Van Law, Plaintff Ms. Uy was on a conference call with Mr. Le, a non-attorney associated with the firm. (*Id.* ¶ 44). During the call, Mr. Le allegedly attempted to direct the way that Ms. Uy performed her job and suggested unethical practices to increase settlement amounts. (*Id.* ¶¶ 44, 45). Ms. Uy opposed these suggestions on the call and suggested a meeting among all attorneys and management to clarify the way business at Van Law Firm should be conducted. (*Id.* ¶ 47). Mr. Le then allegedly directed Ms. Van to terminate Ms. Uy because she was unwilling to "follow the program." (*Id.* ¶ 48). About a week after the conference call, the Human Resources manager at Van Law Firm notified Ms. Uy that she was not the right fit and was being terminated. (*Id.* ¶ 49). The same day, Mr. Le called Mr. Villanueva and informed him that Ms. Uy was no longer at the firm because she was causing too many problems. (*Id.* ¶ 53). Mr. Le also told Mr. Villanueva that if he followed "the program," he would make a lot of money. (*Id.* ¶ 50).

Ms. Uy called the State Bar of Nevada to inquire about whether she had an ethical obligation to file a complaint against Ms. Van. (*Id.* ¶ 51). She then called Mr. Villanueva to discuss the conversation she had with the State Bar of Nevada. (*Id.* ¶ 52). Because he was

unwilling to "follow the program" which he believed to be illegal, Mr. Villanueva was constructively discharged from Van Law Firm four days later. (*Id.* ¶ 54).  On the same day, Ms. Van asked Mr. Villanueva about whether he was aware that he had received a merit pay increase of $10,000, and Mr. Villanueva responded that he did not know about the pay increase. (*Id.* ¶ 55).  Mr. Villanueva filed an unemployment claim wherein he alleged that there were unsafe or illegal working conditions. (*Id.* ¶ 56).  Mr. Villanueva later received a notice that Van Law Firm rejected his unemployment claim and he filed an appeal. (*Id.* ¶ 57).

Plaintiffs originally filed their Complaint and First Amended Complaint against the Van and Le Defendants in the Eighth Judicial District Court in Clark County. (Pet. Removal ¶ 1, ECF No. 1-1).  Defendants removed the case to federal court. (*See generally id.*).  Defendants then filed the instant Motions to Dismiss seeking dismissal of many of Plaintiffs' claims for failure to state a claim, and the Motion to Strike portions of the FAC as immaterial and impertinent.

## II.        LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.  DISCUSSION

The Le Defendants and the Van Defendants both move to dismiss Plaintiffs' claims against them. The Court examines each of Defendant's Motions to Dismiss in turn.

**A. Motion to Dismiss by Le Defendants**

The Le Defendants move to dismiss all the claims that Plaintiffs assert against them: (1) tortious interference with business relations, (2) civil RICO,[1] and (3) civil conspiracy. (*See generally* Mot. Dismiss of Le Defendants ("Le MTD"), ECF No. 12). The Court begins with the tortious interference with business relations claim.

**i. Tortious Interference with Business Relations**

The Le Defendants first seek dismissal of Plaintiffs' tortious interference with business relations claim. (Le MTD 5:12–9:13). They first argue that, as Van Law's alleged agent, Mr. Le cannot tortiously interfere with Van Law's employment contracts. (*Id.* 6:1–7:10).

---

[1] Nevada's racketeering statutes are patterned after the federal Racketeer Influenced and Corrupt Organizations, of "RICO," statutes. *Hale v. Burkhardt*, 764 P.2d 866, 867 (1988). The Court will refer to Plaintiffs' Nevada racketeering claim as the civil RICO claim.

The Supreme Court of Nevada has held that defendants cannot tortiously interfere with their own contracts. *Bartsas Realty, Inc. v. Nash*, 402 P.2d 650, 651 (Nev. 1965). Nevada courts have yet to apply this principle to an agent-principal relationship. But courts in this district have held that "agents acting within the scope of their employment, i.e. the principal's interest, do not constitute intervening third parties, and therefore cannot tortiously interfere with a contract to which the principal is a party." *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005) (collecting cases), *aff'd*, 220 F. App'x 697 (9th Cir. 2007).

Plaintiffs' FAC alleges that "Mr. Le managed, operated, and/or controlled Defendants, Ms. Van and Van Law Firm, *acting or failing to act within the scope*, course, and authority of his duties and responsibilities." (FAC ¶ 19) (emphasis added). This statement appears to assert that Mr. Le could have been acting within or outside of the scope of his duties, which could be interpreted as not alleging either. But even if the Court found that this statement was an allegation that Mr. Le was acting outside of the scope of his employment, it would not be sufficient to meet the pleading standard. *See Twombly*, 550 U.S. at 555 (explaining that Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Plaintiffs did not plead sufficient factual context to allow the Court to draw a reasonable inference that Mr. Le was not acting within the scope of employment. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court DISMISSES Plaintiffs' tortious interference with business relations claim against the Le Defendants and grants leave to amend because the identified deficiencies are capable of correction.

### ii. Civil RICO

The Le Defendants next seek dismissal of Plaintiffs' three RICO claims. Defendants first assert that the RICO claim should be dismissed because Plaintiffs lack standing to bring this claim. (Le MTD 10:15–13:8). They explain that Plaintiffs lack standing because their alleged injuries, primarily lost wages due to wrongful termination, do not result from a RICO

predicate act. (*Id.*). In response, Plaintiffs argue that they have standing because their damages are distinct from their termination and are cognizable under RICO.

To survive a motion to dismiss, a civil complaint under Nevada's RICO act must plausibly allege three elements: "(1) the plaintiff's injury must flow from the defendant's violation of a predicate Nevada RICO act; (2) the injury must be proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff must not have participated in the commission of the predicate act." *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 283 (Nev. 1993). A person engages in a pattern of racketeering activity by committing at least two enumerated predicate criminal acts within a specified timeframe. NRS §§ 207.360, .390. But to recover civilly for a RICO violation, a plaintiff must establish that he has statutory standing by demonstrating "(1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)); *see also Allum*, 849 P.2d at 299.

The only allegation Plaintiffs include regarding the harms that resulted from the alleged racketeering activity is the following statement: "Defendants have caused Plaintiffs harm in an amount to be determined at trial, as a result of their racketeering activities." (FAC ¶ 181). This is not sufficient to satisfy the pleading standard, which requires Plaintiffs to plead sufficient factual matter to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. Though Plaintiffs argue in their Reply that they will demonstrate that their professional and personal reputations were harmed by the Le Defendants' predicate acts, that allegation is not included in the FAC. (Resp. 9:3–12); (*See generally* FAC). The allegations in the FAC at best give rise to an assumption that Plaintiffs are suing over the harms they experienced due to their alleged wrongful termination and constructive discharge, since Plaintiffs do not include allegations

regarding other harms under the civil RICO claim. (*See* FAC ¶¶ 147–182).  The RICO claim could not succeed under such a theory because wrongful termination is not a predicate Nevada RICO act, and thus Plaintiffs cannot recover from an injury that was proximately caused by a wrongful termination. *Allum*, 849 P.2d at 300.  Without factual allegations of other harms that were proximately caused by Defendants' alleged RICO acts, the Court DISMISSES the RICO claim.  Because Plaintiffs could allege that they experienced other harms caused by Defendants' RICO acts, the Court grants leave to amend the RICO claim against all Defendants.

### iii. Civil Conspiracy

Lastly, the Le Defendants seeks dismissal of Plaintiffs' civil conspiracy claim.  They first argue that the intercorporate conspiracy doctrine bars Plaintiffs' claim because a corporation's agents cannot conspire with the corporation as a matter of law. (Le MTD 20:10–20).

Under Nevada law, a civil conspiracy is a "combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Federal Sav. & Loan Ass'n.*, 662 P.2d 610, 622 (Nev. 1983).  However, under the intercorporate conspiracy doctrine, "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Id.*  This limitation prevents a finding of liability for conspiracy for a company's agent unless there is a showing that the employee was acting as an individual and for their individual advantage. *Id.*

Here, Plaintiff has alleged that Mr. Le is an agent of Van Law but has not alleged that Mr. Le was acting in his individual capacity and for his individual advantage in the conspiracy. (*See generally* FAC).  Because the FAC does not allege that Mr. Le was acting in his individual

capacity, the intercorporate conspiracy doctrine bars Plaintiffs' civil conspiracy claim against Mr. Le. *See Collins*, 662 P.2d at 622. Thus, the Court DISMISSES the civil conspiracy claim against Mr. Le, but grants leave to amend since the deficiencies in the complaint are capable of correction.

### B. Motion to Dismiss by Van Defendants

The Van Defendants move to dismiss six of the claims that Plaintiffs brought against them: (1) wrongful termination in violation of public policy, (2) negligent hiring, negligent training and supervision, (3) negligent retention, (4) fraudulent misrepresentation, (5) civil racketeer influenced and corrupt organizations under NRS 207.400, and (6) civil conspiracy. (Mot. Dismiss by Van Defendants ("Van MTD") 2:20–27, ECF No. 14).

#### i. Wrongful Termination in Violation of Public Policy

The Van Defendants first seek dismissal of Plaintiffs' wrongful termination claim, asserting that the allegations do not fit into one of the categories of possible claims for wrongful termination under Nevada law.

Under Nevada law, an employer may generally terminate an at-will employee for any reason without being subject to liability for wrongful discharge. *Smith v. Cladianos*, 752 P.2d 233, 234 (Nev. 1988). However, Nevada recognizes a narrow exception to this rule where an employer discharges an employee for a reason which violates a strong public policy of the state. *D'Angela v. Gardner*, 819 P.2d 206, 216 (Nev 1991). To prevail on a tortious discharge claim in Nevada, a plaintiff must establish that she: (1) was terminated by her employer for reasons that "violate[ ] strong and compelling public policy"; and (2) is without "an adequate, comprehensive, statutory remedy." *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009). A claim for tortious discharge is "available to an employee who was terminated for refusing to engage in conduct that [she], in good faith, believed to be illegal. Any other conclusion. . . would encourage unlawful conduct by employers and force employees to either

consent and participate in violation of the law or risk termination." *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1068 (Nev. 1998) (internal quotation marks omitted).

The Court finds that Plaintiffs have adequately pled a claim for tortious discharge. Plaintiffs allege that Ms. Uy was terminated because she was unwilling to follow Mr. Le's instructions because she believed what he was asking her to do was illegal. (Compl. ¶¶ 47–53). They further allege that Mr. Villanueva was constructively discharged for refusing to take actions that he believed to be illegal. (*Id.* ¶¶ 54). The factual allegations in the FAC are sufficient to "allow[] the court to draw the reasonable inference that the defendant" could be liable for terminating these employees because they refused to engage in conduct they believed to be illegal. *Iqbal*, 556 U.S. at 678. Accordingly, the Court DENIES the Van Defendant's Motion to Dismiss as to the wrongful termination claim.

### ii. Negligent Hiring, Negligent Training and Supervision

Defendants next move to dismiss Plaintiffs' "Negligent Hiring, Negligent Training, and Supervision" claim. Nevada courts recognize two separate torts: one for negligent hiring, and another for negligent training, supervision, and retention. "The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (quoting *Burnett v. C.B.A. Sec. Serv.*, 820 P.2d 750, 752 (Nev. 1991)). "An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities."

Plaintiffs do not allege any of the required elements of a negligent hiring claim. They fail to allege that Van Law knew or should have known that their employees had certain propensities. They also do not allege that Van Law failed to conduct a background check to ensure that the employees were fit for the position. Plaintiffs only include the bare allegations that Van Law "negligently hired" each employee "to perform services in connection with the

practice of law," and that the failure to use reasonable care in hiring "caused Plaintiffs to suffer economic and noneconomic damages." (FAC ¶¶ 81, 83, 85, 87, 89, 92, 94, 95).  These statements, without additional factual allegations, are not sufficient to state a claim of negligent hiring.  *See Hall*, 930 P.2d 98; *Twombly*, 550 U.S. at 555.

The record is similarly devoid of facts to support the remaining negligence-based theories.  In Nevada, the elements of a claim for negligent training, supervision, or retention are: "(1) a general duty on the employer to use reasonable care in the training, supervision, and retention of employees to ensure that they are fit for their positions, (2) breach, (3) injury, and (4) causation." *Lambey v. Nev. ex rel. Dep't of Health and Hum. Servs.*, 2008 WL 2704191, at *4 (D. Nev. July 3, 2008) (citing *Hall*, 930 P.2d at 98, for duty and breach elements and *Jespersen v. Harrah's Operating Co.*, 280 F. Supp. 2d 1189, 1195 (D. Nev. 2002), for elements of injury and causation).

Plaintiffs' general assertion that Ms. Van "failed to use reasonable care in the training, supervision, and retention of employees to ensure they are fit for their position" is merely a legal conclusion couched as a factual allegation. (FAC ¶ 78).  It is therefore insufficient to meet the 12(b)(6) pleading standard. *See Twombly*, 550 U.S. at 555.  Plaintiffs do not allege any other facts that specifically indicate how the Van Defendants violated their duty to use reasonable care in the training, supervision, and retention of employee.  For each employee, Plaintiffs only allege that "Ms. Van knew or should have known that [employee] continuously violated Nevada law when [they] continuously engaged in the unlawful practice of law." (FAC ¶¶ 82, 84, 86, 88, 91, 93).  But the simple allegation that an employee acted wrongfully does not in and of itself support a claim for negligent training, supervision, or retention, without additional factual allegations to support a finding that the employer violated its duty.  *See Hall*, 930 P.2d at 98.  Therefore, the Court DISMISSES Plaintiffs claims for negligent hiring

and negligent training, supervision, and retention.  The Court also grants leave to amend these claims, since it is not clear that amendment would be futile.

### iii. Fraudulent Misrepresentation

The Van Defendants next move to dismiss Plaintiffs' fraudulent misrepresentation claim, asserting that Plaintiffs' allegations are conclusory and not pled with particularity. (Van MTD 8:14–9:10).  Plaintiffs respond that their claim was pled with sufficient particularity and that Defendants have been properly notified of the claim made against them.

To state a claim for fraudulent misrepresentation in Nevada, a plaintiff must allege that (1) defendant made a false representation; (2) defendant knew or believed the representation to be false; (3) defendant intended to induce plaintiff to rely on the misrepresentation; and (4) plaintiff suffered damages as a result of his reliance. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (1998).  In addition, Rule 9 requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  This particularity requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007); *see also Morris v. Bank of Nev.*, 886 P.2d 454, 456 n. 1 (Nev. 1994).

Plaintiffs' claim for misrepresentation fails because it was not pled with specificity as required by Rule 9(b).  Plaintiffs do not include allegations about who made the fraudulent statements, when the statements were made, or where they were made.  They also fail to allege the specific content of the fraudulent statements.  Moreover, Plaintiffs' allegations are essentially a "formulaic recitation of the elements of a cause of action" that includes only legal conclusions and no factual allegations to support those conclusions. *Twombly*, 550 U.S. at 555.  As such, Plaintiffs have not met the 12(b)(6) pleading standard, let alone the heightened pleading requirements for fraud. *See id.*  Thus, the Court DISMISSES Plaintiffs' fraudulent

misrepresentation claim. Because it is possible to correct the deficiencies identified above, the Court grants Plaintiffs leave to amend this claim.

### iv. Civil RICO

The Van Defendants also seek dismissal of the civil RICO claims asserted against them. (Van MTD 9:12–11:1). Because the Court's prior discussion of Plaintiffs' civil RICO claim was not specific to the Le Defendants, the Court also DISSMISSES the civil RICO claim against the Van Defendants for the same reasons with leave to amend.

### v. Civil Conspiracy

The Van Defendants lastly move to dismiss Plaintiffs' civil conspiracy claim against them. They first argue that Plaintiffs claim fails because they do not identify a specific tort associated with the claim, which they assert is required for a civil conspiracy claim. (Van MTD 11:15–16). But under Nevada Law, an actionable civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consolidated Generator-Nevada, Inc. v Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (1998) (quoting *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210 (1993)). Thus, Plaintiff need not identify a specific tort associated with the claim.

The Van Defendants next argue that a heightened pleading standard applies to Plaintiffs' claim because it is a claim for civil conspiracy to defraud. (Van MTD 11:6–12). Plaintiffs' response does not address this argument. (*See generally* Resp. Van MTD). However, because of the lack of factual allegations, it is not clear whether Plaintiffs' claim is in fact one for civil conspiracy to defraud. Plaintiffs title the claim "Civil Conspiracy" and do not include allegations related to fraud under the claim, so the Court declines to apply the heightened pleading standard for fraud to the civil conspiracy claim at this stage.

Regardless, the factual allegations in Plaintiffs' FAC are not sufficient to state a civil conspiracy claim. Each of the three statements that Plaintiffs included under their civil conspiracy claim are legal conclusions that do not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court therefore dismisses the civil conspiracy claim against the Van Defendants with leave to amend.

### vi. Conclusion on Motions to Dismiss

In sum, the Court grants the Le Defendants' Motion to Dismiss as to Plaintiffs' Tortious Interference with Business Relations claim, civil RICO claims, and civil conspiracy claim. The Court also grants the Van Defendants' Motion to Dismiss as to Plaintiffs' negligent hiring claim, negligent training, retention, and supervision claim, fraudulent misrepresentation claim, civil RICO claim, and civil conspiracy claim, and denies the Van Defendants' Motion to Dismiss as to Plaintiffs' wrongful discharge claim. Because it is not clear that amendment would be futile for any of the claims, the Court grants Plaintiffs leave to amend on all dismissed claims.

### C. Motion to Strike

The Van Defendants also move to strike (1) the names of certain employees and (2) the request for punitive damages from the FAC. (Mot. Strike 11:24–12:2, ECF No. 15). Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) (quotation marks, citation, and first alteration omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994).

Motions to strike are disfavored even when brought for their prescribed purpose. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

### i. Employee Names

Defendants first argue that the non-defendant employee names that are included in the FAC should be struck because there is no reason that they should be mentioned. (Mot. Strike 12:4–12). The Van Defendants do not cite any case law to support their arguments. Plaintiffs respond that the names are properly included because the employees are material to the instant case as an "intrinsic part" of the criminal schemes giving rise to Plaintiffs' claims. (Resp. Mot. Strike 16:1–11, ECF No. 18). In light of the fact that the Court granted the Motion to Dismiss on the claims that included the names of the non-defendant employees at issue, the Court DENIES the Van Defendant's Motion to Strike the non-defendant employee names as moot and takes no position as to whether the names should be included in a subsequent amended complaint.

### ii. Punitive Damages

Next, Defendants contend that the Court should strike Plaintiffs' request for punitive damages. (Mot. Strike 12:13–14:11). But the Ninth Circuit has made clear that Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law. *Whittlestone*, 618 F.3d at 974–75. Defendants make no argument as to why *Whittlestone* should not apply here, and therefore have not met their burden. The Court therefore DENIES the Motion to Strike Plaintiffs' request for punitive damages.

///

///

///

///

## V. CONCLUSION

**IT IS HEREBY ORDERED** that the Le Defendants' Motion to Dismiss, (ECF No. 12), is **GRANTED,** with leave to amend.

**IT IS FURTHER ORDERED** that the Van Defendants' Motion to Dismiss, (ECF No. 14), is **GRANTED, in part, and DENIED, in part.** Plaintiffs' negligent hiring claim, negligent training, retention, and supervision claim, fraudulent misrepresentation claim, civil RICO claim, and civil conspiracy claim are dismissed with leave to amend. Plaintiffs' wrongful termination claim is not dismissed.

**IT IS FURTHER ORDERED** that Plaintiff has 21 days from the date of this Order to file an amended complaint. The amended complaint should remedy the deficiencies identified in this order and may not add new claims or defendants. Failure to file an amended complaint by the required date will result in the Court dismissing Plaintiffs' claims with prejudice.

**IT IS FURTHER ORDERED** that the Van Defendants' Motion to Strike, (ECF No. 15), is **DENIED**.

**DATED** this __29__ day of January, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT